

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 AUG 26  AM 10: 47

LORETTA G. WHYTE
CLERK

# UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROOSEVELT STEWART**                                    **CIVIL ACTION**

**VERSUS**                                               **NO.  04-1325**

**J. SIMMONS, R.N., BESSIE CARTER,**                     **SECTION: "B" (4)**
**R.N., M.D. THOMAS, B. COOPER, R.N.,**
**WARDEN MILLER, MR. LEFTWICH -**
**DENTIST, MS. TOUCHSTONE**

## REPORT AND RECOMMENDATION

Before the Court are three motions: (1) the defendants' **Motion to Dismiss Complaint (1)**

**For Failure to Serve; and (2) as Frivolous, For Failure to State a Claim on Which Relief May**

**Be Granted, and/or Because the Plaintiff Seeks Monetary Relief Against Defendants Who Are**

**Immune From Such Relief Pursuant to 28 U.S.C. §1915(e)(2)(B)(i), (ii), and (iii) and Fed. R.**

**Civ. P. 12(b)(1) and (6) and Motion For a More Definite Statement/Request for** *Schultea* **Reply**

**(Rec. Doc. No. 20)**; (2) the plaintiff's **Motion to Compel Discovery (Rec. Doc. No. 23)**; and (3) the

defendants' **Motion for Protective Order and to Stay Pending Discovery**.  These motions, along

with the entire case, were referred to a United States Magistrate Judge to conduct a hearing,

including an Evidentiary Hearing, if necessary and to submit proposed findings and

recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b) and (c), § 1915e(2), and §**

**1915A**, and as applicable, **Title 42 U.S.C. § 1997e (c)(1) and(2)**.

Fee
Process
Dktd
CtRmDep
Doc. No

On June 25, 2004, the undersigned Magistrate Judge conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny with the plaintiff participating by telephone.[2] Upon review of the record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

## I.    Factual Summary

### A.    The Complaint

The plaintiff, Roosevelt Stewart ("Stewart"), was incarcerated in the Washington Correctional Institute ("WCI") in Angie, Louisiana, at the time of the filing of this complaint.[3] Stewart filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983 against the defendants, Nurse J. Simmons, Nurse Bessie Carter, Dr. Thomas, Nurse B. Cooper, Warden Miller, Dr. Leftwich, Correctional Officer Touchstone, and EMT Stewart, each in their individual and official capacities, seeking monetary damages as a result of the alleged medical indifference he experienced at WCI.

Stewart alleges that, on March 2, 2004, while being evaluated as a new arrival, he reported to Nurse Simmons that he had a serious problem with his left eye. He alleges that he told her that his left eye is sensitive to any and all light and that he wears glasses, which he lost at a job-site. He also claims that he told her that pain caused his blood pressure to elevate.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. *Spears*, 766 F.2d at 180. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barrientos*, 926 F.2d 480, 481 (5th Cir. 1991).

[2] Rec. Doc. No. 8. The plaintiff was sworn prior to testifying. The cassette tape of the hearing is being forwarded to the custody of the Court Recording Unit along with a copy of this Report and Recommendation.

[3] Rec. Doc. No. 1. Stewart is presently incarcerated in the Winn Correctional Center in Winnfield, Louisiana. Rec. Doc. No. 10.

He states that Nurse Simmons inquired about his medication, and he informed her that he takes Procardia XL 90, Lasix 20 mg., and Catapres 0.3. Stewart further alleges that he produced to her a permanent duty status which indicated the medical restrictions he had at the time. He claims that she returned the duty status to him and told him to tell the doctor.

Stewart further alleges that, at that same evaluation, he told Nurse Simmons that he had six teeth that required serious attention. He states that he told her that he declared himself a dental emergency on January 27, 2004, because he had four holes in an upper front tooth, the cap was loose on his lower left bottom tooth, he had excruciating pain in the bottom right "jaw teeth," and he had not eaten for three days. He claims that Nurse Simmons told him that these complaints were not in his folder.

Stewart further claims that, when he saw Dr. Thomas about his medical problems, he explained his hypertensive condition and showed him the medical duty status, which stated "No-Duty, must sit in shade, must have lower bunk, no sports." He alleges that Dr. Thomas treated his blood pressure and told him that he would place him on an indoor light-duty status with restrictions.

Stewart claims that, upon his return to Nurse Simmons, she announced that the doctor could not assign that kind of duty status at WCI. He further alleges that she went to Dr. Thomas and returned to explain that he would receive a regular duty status indoors.

Stewart claims that Nurse Simmons's interference with the medical diagnosis and duty status ordered by Dr. Thomas led to another incident on March 24, 2004, when he was given a direct verbal order by Officer Touchstone to carry large clothing boxes up a flight of stairs to the attic of the gymnasium. He alleges that he showed his duty status to Touchstone and she read it to mean that he could do regular work. She instructed him to continue working or be locked up. Stewart claims

3

that, after hauling five or six boxes, he asked Touchstone to allow him to get an emergency pass from his dormitory.

Stewart states that he went to the infirmary to declare himself a medical emergency for treatment of his blood pressure, headaches in both eyes, nausea and ringing in his ears. The EMT told him to sit and 35 minutes later he was seen. He claims that his blood pressure was 180/140, his pulse 121, and blood oxygen saturation at 100%. He claims that the doctor was called by telephone and he was given oxygen and sublingual nitroglycerine. Stewart claims that he suffered from this incident, his eyesight has diminished, and he was placed at risk of heart and kidney disease. He states that every time he goes to his job, he fears that he will be placed on a task inappropriate for his strength.

Stewart also claims that he was not provided the nitroglycerin ordered after the incident. He further claims that he suffered another incident on March 31, 2004, when his blood pressure was 163/115 and the doctor took him off of his work assignment. He claims that, the next day, he was ordered back to the same job which was a substantial risk to his health.

Stewart alleges that, after he saw Nurse Simmons on March 2, 2004, he was also sent to the dentist for a new arrival evaluation. He claims that Dr. Leftwich told him that he had six teeth that needed to be removed. Dr. Leftwich also told him that his records did not indicate that he had made any prior complaints about his teeth and that to receive any further care, he would have to file a sick call request.

Stewart claims that on March 23, 2004, he was seen for dental care after completing a sick call request. At that time, Stewart alleges Dr. Leftwich filled one hole in his upper front tooth. He

alleges that he complained on two occasions about Dr. Leftwich's lack of treatment, however, in each response, Nurse Carter approved of his treatment.

He also claims that Dr. Leftwich put him on dental call out for April 26, 2004. However, instead of working on his teeth, the dentist talked to him about his teeth for one hour. He claims that the dentist also told him that he did not meet the test for gum disease.

Stewart also claims that he wrote a sick call complaint on April 26, 2004, to explain to Nurse Regan that his medication caused him fatigue and nausea. He alleges that he could not wake up in the morning and that he was falling asleep at work. As a result, he complains that he was threatened with rule violations. He also declared himself an emergency for pain between his neck and shoulders, and headaches over his eyes. He told EMT Stewart about the medication he was taking. Stewart claims that EMT Stewart left out his complaints so that he did not have to treat him for high blood pressure of 160/100 and sent him back to his work assignment.

**B.    The *Spears* Hearing**

Stewart testified that he arrived in WCI on March 1, 2004, as a result of a probation revocation. Upon being released in 2001, Stewart was paroled for five years after receiving convictions for forgery and attempted robbery which occurred in 1982. He left the state in violation of his parole which resulted in the revocation.

Stewart testified that, on his first day at WCI, he put his glasses down either in the laundry room or the gym and they were never found or replaced. He was also evaluated by Nurse Simmons upon his arrival for his medical background. He told her that he needed glasses and he has not seen a doctor about his eyes. His grievance was accepted on March 2, 2004, but the medical personnel ignored that and focused on his hypertension.

5

He further stated that he arrived with a duty status that required no duty. He claims that he told Nurse Simmons and he was allowed to see the doctor. After the doctor saw him, he was told that he would be given a particular duty status but Nurse Simmons objected to it because they did not have that particular duty status at their facility. Simmons found the doctor and then his duty status was changed to a regular duty status indoors.

He testified that, while he was working on a particular job assignment, Officer Touchstone told him to carry and lift boxes upstairs. She insisted that he complete the duties because he had a regular duty status and the work was indoors. He states that he became ill and he went to the infirmary where they refused to treat him. He further testified that on June 17, 2004, the doctor changed his duty status to show that he had no duty.

Stewart also stated that he was supposed to receive nitroglycerin for a heart condition involving an enlarged ventricle. However, he claims that he did not receive that medication after it was ordered.

Stewart testified that he filed suit against Officer Touchstone because she made him do the regular duty work instead of calling the infirmary to confirm his duty status. He conceded that she followed the duty status he had at that time, but contends that she should have followed up with ranking officials when he lodged the complaint about the assigned duty status.

Stewart stated that he sued Bessie Carter, because she is the medical administrator. He alleged that she was advised of his situation but did nothing to change his treatment or duty status or otherwise act on his complaints. He stated that, as the supervisor, she should have told the medical personnel what to do.

Stewart also stated that he filed suit against Warden Miller because he was aware of the problems through the administrative grievance complaints and he did nothing about the treatment he was receiving from the medical personnel.

Stewart alleges that Dr. Leftwich, the dentist, has failed to provide adequate care to repair the holes in his upper teeth.  He claims that the dentist refuses to repair his teeth until Stewart improves his dental hygiene because the dental work will not do any good otherwise.  Stewart stated that he has holes and abscesses which make it hard to eat.

He testified that he filed a grievance complaint about the failure to provide him with nitroglycerin but the complaint was rejected.  He claims that he did not appeal it because he did not know he could.  After the rejection, he wrote letters to Bessie Carter and received no assistance from her.

## II.    **Pending Motions**

Before the Court is the defendants' motion to dismiss seeking dismissal of the claims against Touchstone and EMT Stewart for failure to serve the complaint on them pursuant to Fed. R. Civ. P. 4(m).  The defendants also move the court to exercise its statutory authority to dismiss the plaintiff's claims as frivolous, for failure to state a claim for which relief can be granted, and because the complaints seeks monetary relief against immune defendants.  The defendants otherwise move for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and alternatively request a more definite statement of the plaintiff's claims and/or a *Schultea* reply to their qualified immunity defense.  The plaintiff has not filed a response to this motion.

In connection with the motion to dismiss, the defendants also filed a motion for protection from the need to engage in discovery until resolution of the immunity issues addressed in the motion

to dismiss. This came in response to the plaintiff's motion to compel discovery which is also pending before the Court.

For the following reasons, the Court will conduct its statutory review for frivolousness before turning to the pending motion to dismiss.

## III.    Standards of Review

### A.    Statutory Frivolousness Review

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e (c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**B.**     **Dismissal Pursuant to Fed. R. Civ. P. 12(b)**

As set forth above, the framework set forth in § 1915, §1915A and Title 42 U.S.C. § 1997e, are statutory directives for the Court to conduct preliminary review of the pleadings pursuant to the Prison Litigation Reform Act of 1996.  There is no mechanism in that statute for counsel to move the Court to conduct its statutory review.  By its very language, a motion to dismiss based on the failure to state a claim, which encompasses consideration of immunity doctrines, must be brought by the party or counsel under Fed. R. Civ. P. 12(b)(6).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court may dismiss a complaint for failure to state a claim upon which any relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  Under Rule 12(b)(1), the court may dismiss a complaint if it lacks jurisdiction over the subject matter.  *See* Fed. R. Civ. P. 12(b)(1).  The same standard is applied for a motion to dismiss brought under either Rule 12(b)(1) for lack of jurisdiction or under Rule 12(b)(6) for failure to state a claim for which relief can be granted.  *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

In considering a motion to dismiss, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  A complaint shall only be dismissed if it is beyond doubt that the plaintiff can prove no facts in support of his claim that would entitle him to relief.  *Home Builders Ass'n of Ms., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

In resolving a Rule 12(b)(6) motion, the court is generally limited to considering only those allegations appearing on the face of the complaint.  However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account.  *Chester County Intermediate Unit v. Pa. Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990).  Further, the

9

Fifth Circuit has held that when reviewing pro se complaints, the court must employ less stringent standards, look beyond the inmate's formal complaint and consider material subsequently filed as amendments to that complaint. *Howard v. King*, 707 F.2d 215 (5th Cir. 1983); *see also Haines v. Kerner*, 404 U.S. 519 (1972).  In *Taylor v. Gibson*, the Court explained:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated.  An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Taylor v. Gibson*, 529 F.2d 709, 713-14 (5th Cir.1976); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Finally, while conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b) motion to dismiss, such motions are viewed with disfavor and are rarely granted.  *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

## IV.   Review for Frivolousness

### A.   Defendants in Their Official Capacities

Stewart has named the defendants in both their individual and official capacities.  However, the claims against the defendants in their official capacity are frivolous and otherwise fail to state a claim for which relief can be granted.

In order to succeed on a claim under § 1983, a plaintiff must prove both the constitutional violation and action that was taken by a "person" under color of state law.  *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson*, 454 U.S. 312 (1981).  A state actor sued in his official capacity is not considered a person for purposes of suit under § 1983.  *Will v. Mich.*

*Dep't of State Police*, 491 U.S. 58 (1989).  Instead, the action would be considered one against the their employer, the Louisiana Department of Corrections ("DOC").  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978).  The DOC is a department within the Louisiana state government.  La. Rev. Stat. Ann. § 36:401.  For Eleventh Amendment purposes, the DOC is considered an arm of the state since any judgment against it or its subdivisions necessarily would be paid from state funds. *Anderson v. Phelps*, 655 F. Supp. 560, 564 (M.D. La. 1985).  Therefore, suit against the defendants in their official capacities is suit against the State of Louisiana, which is prohibited by the Eleventh Amendment. *Muhammad v. Louisiana*, 2000 WL 1568210 (E.D. La. Oct. 18, 2000).

The Eleventh Amendment forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his own State. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185-86 (5th Cir. 1986).  A state may expressly waive this Eleventh Amendment sovereign immunity. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed unequivocally); *Welch v. Dep't of Highways*, 780 F.2d 1268, 1271-73 (5th Cir. 1986).  However, the State of Louisiana has not done so.  To the contrary, La. Rev. Stat. Ann. § 13:5106(a) provides that "no suit against the state . . . shall be instituted in any court other than a Louisiana state court."

Stewart's claims against the defendants in their official capacities fail to state a claim for which relief can be granted and are otherwise barred by the Eleventh Amendment.  Stewart's claims, therefore seek relief against an immune defendant and must be dismissed pursuant to Title 28 U.S.C. § 1915(e) and § 1915A.

11

B.   **Nurse B. Cooper**

Stewart has named Nurse B. Cooper ("Nurse Cooper") as a defendant in this action. However, he fails to set forth any allegations against her either in the complaint or at the *Spears* Hearing.

Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his constitutional rights. Title 42 U.S.C. § 1983. As stated above, a plaintiff must prove both the constitutional violation and that the action was taken under color of state law. *Flagg Bros., Inc.*, 436 U.S. at 156; *Polk County*, 454 U.S. at 312.

In this case, Stewart has failed to assert any action or inaction by Nurse Cooper that would arise to a violation of a constitutional right. Accordingly, the claims against Nurse Cooper are frivolous and otherwise fail to state a claim for which relief can be granted.

C.   **Warden James Miller**

Stewart named Warden James Miller ("Warden Miller") as a defendant in the complaint without allegations against him. At the *Spears* Hearing, Stewart testified that he filed suit against Warden Miller because Warden Miller denied his grievance complaints and did not intervene in his medical care.

It is true that an inmate has a First Amendment right to file grievances against prison officials on his own behalf. *See Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir.1996). This right is protected, however, only if the underlying claim is not frivolous. *See Lewis v. Casey*, 518 U.S. 343, 353 n. 3 (1996) ("Depriving someone of a frivolous claim ... deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.")

Furthermore, inmates generally have no constitutional right under the First or Fourteenth Amendments to an effective grievance procedure. *See Wilcox v. Johnson,* 85 F.3d 630, 1996 WL 253868 at *1 (6th Cir. May 13, 1996)(Table, Text in Westlaw); *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1994); *Buckley v. Barrow,* 997 F .2d 494, 495 (8th Cir.1993); *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991); *Flowers v. Tate,* 925 F.2d 1463, 1991 WL 22009 at *1 (6th Cir. Feb. 22, 1991) (Table, Text in Westlaw).  In other words, there is no constitutional guarantee that the inmate will be satisfied with the responses given to his grievance complaints by the prison officials. *Id.*

In this case, Stewart does not allege that he was denied the ability to file a grievance complaint or that Warden Miller harbored ill will against him for filing the grievances.  Stewart's only claim is that the Warden's answer to his grievance appeals was not satisfactory.  In this regard, Stewart has failed to state a claim against Warden Miller.  Therefore, the claims against Warden Miller should be dismissed as frivolous and/or for failure to state a claim.

### D.   <u>Bessie Carter</u>

Stewart also filed suit against Bessie Carter ("Carter") because she is the administrator of the medical unit at WCI.  He filed suit against her claiming that he wrote to her about his medical condition and she failed to take any steps to have her subordinates change his duty status.

A supervisory official, like Carter, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M Univ.,* 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker,* 602 F.2d 1205, 1220 (5th Cir. 1979).  Moreover, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional

violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120 (5th Cir. 1980).

In this case, Stewart has not alleged that Carter had any involvement in his actual medical care and his claims against her as a supervisory official are frivolous. Furthermore, he claims that her response to his complaints about his medical care were inadequate because she did not agree with him and require that the medical personnel change his duty status. As discussed in connection with Warden Miller, this claim is frivolous and otherwise fails to state a constitutional violation.

## V.    **Defendants' Motion to Dismiss**

Having resolved the claims against Carter, Cooper, Miller, and Touchstone in the review for frivolousness, the Court has remaining before it only those medical indifference claims urged by the plaintiff against Nurse Simmons, Dr. Thomas, Dr. Leftwich, and EMT Stewart, each in their individual capacities. The defendants' motion to dismiss will be considered as to these remaining defendants. The remainder of the motion is rendered moot by the Court's review for frivolousness and should be in part dismissed as moot for that reason.

### A.    **Failure to Serve EMT Stewart and Officer Touchstone**

The defendants argue that the plaintiff has failed to make service on EMT Stewart and Officer Touchstone within 120 days of the filing of the complaint. For this reason, the defendants seek dismissal of the complaint as it applies to Stewart.

A plaintiff is required to serve the defendant with summons and complaint within 120 days of the filing of the complaint. Fed. R. Civ. Pr. 4(m). If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court shall *sua sponte* dismiss the action without prejudice or direct that service be effected within a specified time,

14

provided that, if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. *Bann v. Ingram Micro, Inc.*, 108 F.3d 625, 626 (5th Cir. 1997). When process has not been properly served on a defendant, dismissal of the complaint itself is inappropriate where there exists a reasonable prospect that service may be obtained. *Amous v. Trustmark Nat'l Bank*, 195 F.R.D. 607, 610 (N.D. Miss. 2000) (*citing Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992)).

In this case, Stewart is proceeding *in forma pauperis*. The Court therefore caused the United States Marshal's Service to attempt service of summons and the complaint on EMT Stewart and Officer Touchstone pursuant to Title 28 U.S.C. § 1915 (d) and Fed. R. Civ. P. 4(c)(2). The Marshal filed the returns of service into the record which were not executed and which contain an explanation "need full name."[4]  There is no indication on the returns that the Marshal's Service attempted service, only that service was not made.

A review of the record before the Court does not disclose a more complete name for EMT Stewart or Officer Touchstone. However, it appears from the returns that service may be completed if the plaintiff can provide the Court with more complete names for these defendants.

For this reason, dismissal of the complaint against EMT Stewart and Officer Touchstone for lack of service is not appropriate at this time and is too harsh a sanction under the circumstances. *See Berry v. Cigna/RSI-Cigna*, 975 F.2d 1188, 1191 (5th Cir. 1992) (considering involuntary dismissal for failure to prosecute under Fed. R. Civ. P. 41(b)) (*quoting Callip v. Harris County Child Welfare Dept*, 757 F.2d 1513, 1519 (5th Cir. 1985)); *Price v. McGlathery*, 792 F.2d 472, 474 (5th Cir. 1986) (same).

---

[4]Rec. Doc. No. 4, 5.

The plaintiff should be given an opportunity to provide the Court with a more complete name for EMT Stewart so that service may again be attempted. Such an amendment to the identification of this party will not run afoul of the rules governing notice and amendment. *See Jacobsen v. Osborne*, 133 F.3d 315 (5th Cir. 1998); Fed. R. Civ. P. 15(c)(3).

However, in light of the determination that the claims urged against Touchstone be dismissed pursuant to the defendants' motion, there is no need to serve the complaint on Touchstone.

For these reasons, the defendants' motion to dismiss for lack of service should be denied.

### B.    Standard of Medical Care

Stewart alleges that the remaining defendants, Simmons, Thomas, Leftwich, Touchstone, and EMT Stewart, denied him adequate medical or dental care while he was housed in WCI. The standard of conduct imposed on defendants with respect to the medical care of inmates in custody at WCI was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 97, 104.

Section 1983 permits recovery for serious physical harm "only where the defendant acts intentionally" or with an analogous state of mind usually described as "deliberate indifference" to deprivation of the victim's constitutional right. *See Manarite v. City of Springfield*, 957 F.2d 953, 955 (1st Cir.), *cert. denied*, 506 U.S. 837 (1992) (citing *Canton v. Harris*, 489 U.S. 378, 388-390 (1989)) (discussing deliberate indifference standard in Fourteenth Amendment municipal liability, police denial of medical treatment case). The Supreme Court defined the "deliberate indifference" to mean that a prison official is liable "only if he knows that the inmates face a substantial risk of

serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; *Reeves*, 27 F.3d at 176; *see also Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). "Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Bradley*, 157 F.3d at 1025.

This is true whether the indifference is manifested by prison doctors or other prison officials in their response to the prisoner's needs. It is also true where the indifference is manifested by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.* In some circumstances, delay in providing needed medical treatment may amount to a constitutional violation. *See Benson v. Cady*, 761 F.2d 335 (7th Cir. 1985); *Duncan v. Duckworth,* 644 F.2d 653 (7th Cir. 1981). However, even the delay must be caused by the defendant's deliberate indifference if it is to rise to the level of a constitutional violation. *See Estelle,* 429 U.S. at 104-05.

Therefore, in order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.*, at 104. However, a complaint that a physician, medical care provider, or other prison official has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. *Id.*

Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Id.* Furthermore, an inmate's disagreement with his medical treatment does not give rise to a constitutional claim under § 1983. *Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir.1997). Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a

constitutional violation, while malpractice or negligent care does not. *Mendoza v. Lynaugh*, 989

F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis

upon which to predicate a section 1983 action"); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir.

1982) ("mere negligence in giving or *failing to supply* medical treatment would not support an action

under Section 1983"(emphasis added)); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir.

1989).

### C.    Doctrine of Qualified Immunity

Although the defendants argue that the medical care provided to Stewart was adequate, they

nevertheless contend that they are entitled to qualified immunity.

Qualified immunity shields government officials from individual liability for performing

discretionary functions, unless their conduct violates clearly established statutory or constitutional

rights of which a reasonable person would have known. *Colston v. Barnhart*, 130 F.3d 96, 98 (5th

Cir. 1997); *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532-33 (5th Cir. 1997) (citing

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A qualified immunity defense is analyzed under

a two-step process. *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000);

*Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998) (on appeal after remand); *Colston*, 130

F.3d at 99.

The first step is to determine whether the plaintiff has alleged a violation of a clearly

established constitutional right under currently applicable constitutional standards. *Jacobs*, 228 F.3d

at 393; *Hare*, 135 F.3d at 325; *Coleman*, 113 F.3d at 533. In determining whether a right is clearly

established, this court is confined to precedent from the Fifth Circuit and the Supreme Court. *Shipp*

*v. McMahon*, 234 F.3d 907, 915 (5th Cir. 2000), *cert. denied*, 532 U.S. 1052 (2001). Therefore, a

right is considered to be clearly established if, based on pre-existing law, the unlawfulness of the conduct in question is apparent. *Id.* In other words, the right is clearly established if its "'contours . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (other citations omitted); *accord Foster v. City of Lake Jackson*, 28 F.3d 425, 29 (5th Cir. 1994).

When the plaintiff alleges a constitutional violation so as to satisfy the first prong, the second step requires the Court to determine whether the defendant's conduct was objectively reasonable under existing clearly established law. *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001); *Jacobs*, 228 F.3d at 393; *Foster*, 28 F.3d at 428-29. Officials who act reasonably but mistakenly are still entitled to the defense. Qualified immunity gives ample room for mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law. *Anderson*, 483 U.S. at 641; *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986); *Hare*, 135 F.3d at 325. The court can determine as a matter of law whether a defendant is entitled to qualified immunity and, specifically, whether a defendant's conduct was objectively reasonable. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *White v. Balderama*, 153 F.3d 237, 241 (5th Cir. 1998); *Colston*, 130 F.3d at 99.

### D.    Nurse Simmons

In the instant case, Stewart alleges Nurse Simmons caused a change in this duty status to a regular indoor status with disregard for his hypertension. He further argues that, as a result of Simmons interference, he was repeatedly assigned to work jobs that led to episodes of hypertension causing him to seek emergency medical care.

Stewart also alleges that Simmons told him that his records did not contain past complaints about his six problem teeth and she referred him to the dentist. He also alleges that Simmons did not address his complaints about his eyes and instead told him to tell the doctor. Stewart concedes that he saw the dentist for his dental complaints because Simmons sent him there. He also concedes that Simmons referred him to Dr. Thomas, but he did not discuss his eye problems and lost glasses with Dr. Thomas, because he was more concerned with his hypertension. Neither of these claims state an indifference to his medical needs on the part of Nurse Simmons. The defendants' motion should be granted as to these claims.

However, Stewart has alleged that Simmons interfered with his duty status with indifference to his more serious medical condition. In *Jackson v. Cain*, the United States Fifth Circuit determined that that the constitutionality of a particular working condition must be evaluated in the light of the particular medical conditions of the complaining prisoner. *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). "'[W]hen the type of work to which the convict is assigned admittedly worsens a pathological condition, such work must be deemed cruel and unusual punishment within the meaning of the Eighth Amendment to the United States Constitution, when the work has been assigned with the knowledge of the condition and that it will be worsened thereby or when it has been continued with the same knowledge.'" *Jackson*, 864 F.2d at 1246 (quoting *Black v. Ciccone*, 324 F. Supp. 129, 133 (W.D. Mo. 1970). A constitutional violation occurs where the pathological condition is a medically serious one, and the worsening caused by the work is significant. *Id.*

The Fifth Circuit held that if prison officials knowingly put a prisoner on a work detail which they knew would significantly aggravate his serious physical ailment, the decision would constitute deliberate indifference to serious medical needs in violation of the Eighth Amendment. *Id.*, at 1246.

Therefore, the Court finds that Stewart has stated alleged a constitutional violation under the Eighth Amendment arising from the duty status assignment. As noted above, the standard of medical care owed to Stewart was resolved well before these incidents occurred. The concerns and ramifications of placing an inmate into work without regard for its affect on his serious medical condition was likewise resolved before Stewart entered WCI in 2004. Under the circumstances as alleged by the plaintiff, the record does not demonstrate a basis for qualified immunity at this time. The defendants' motion should be denied as to this claim.

### E.    Dr. Thomas

Stewart alleges that Dr. Thomas knew of the seriousness of his hypertension and heart problems and ordered a light duty status. He alleges that, without regard for this knowledge, Dr. Thomas nevertheless allowed Nurse Simmons to change the duty status to a more strenuous level in spite of his physical condition. He also alleges that Dr. Thomas failed to address his complaints about the change and failed to reassess the duty status for another four months, on June 17, 2004, after this lawsuit was filed.

For the reasons outlined in connection with Stewart's duty status claims against Nurse Simmons, the Court finds Stewart has stated a claim against Dr. Thomas who is not entitled to qualified immunity under these circumstances. *See Jackson v. Cain,* 864 F.2d 1235 (5th Cir. 1989).

### F.    Officer Touchstone

The plaintiff has named Officer Touchstone as a defendant because she was the correctional officer who instructed him to carry boxes as a work assignment on March 24, 2004. He concedes that, at the time, his duty status allowed him to do regular work and that the work he did was within

his assigned duty status. However, he contends that Touchstone should have questioned his duty status when he complained that his hypertension kept him from doing that type of work.

To recover for deliberate indifference to a serious medical condition, a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see also Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).[5]

In the instant case, Stewart has not alleged a claim of this magnitude against Officer Touchstone. The purpose of the work duty status is to advise the prison officials of the level of work to which an inmate can be assigned. Stewart concedes that Touchstone's assignment was within the parameters of the duty status he carried at that time.

Furthermore, when he complained to her that he was not feeling well, she allowed him to go to the infirmary on a self-declared emergency. Given these facts as alleged by the plaintiff, he has not established that Touchstone acted with deliberate indifference sufficient to state a claim under § 1983. Furthermore, her discretionary reliance on the written duty status would entitle her to qualified immunity. The defendants' motion to dismiss the claims against Touchstone should be granted.

### G.   EMT Stewart

Stewart alleges that, on or about April 26, 2004, he went to the infirmary to declare himself an emergency for pain between his neck and shoulders and headaches over his eyes. He states that

---

[5]A more detailed summary of the law on medical indifference is outlined below. The Court has fully considered all aspects of that doctrine in reaching the conclusion regarding Officer Touchstone.

he told EMT Stewart about the hypertension medication he was taking, which was causing him fatigue and nausea. Stewart claims that EMT Stewart left out his complaints about the medication on the medical request form so that he did not have to treat him for high blood pressure, which was 160/100, and instead, sent Stewart back to his work assignment.

Stewart therefore alleges that EMT Stewart disregarded his complaints, failed to place them in his record, and failed to treat him for his hypertension. Under the parameters of *Estelle*, Stewart has alleged indifference to his medical needs by EMT Stewart, who is not entitled to qualified immunity for an intentional denial of care. The motion to dismiss the claims against EMT Stewart should be denied.

### H.   Dr. Leftwich

Stewart alleges that Dr. Leftwich, the dentist at WCI, refused to treat or remove his damaged teeth until the plaintiff learned better oral hygiene. Stewart alleges that, in spite of his compliance with the directive to brush his teeth, Dr. Leftwich would not treat his abscesses or cavities which prevented him from eating. The defendants suggest in the motion to dismiss that Stewart merely disagrees with Dr. Leftwich's course of treatment which is within sound dental practices.

In certain circumstances, the need for dental care combined with the effects of not receiving it may give rise to a sufficiently serious medical need to show objectively a substantial risk of serious harm. *See Hunt v. Dental Dep't,* 865 F.2d 198, 200 (9th Cir.1989); *Ramos v. Lamm,* 639 F.2d 559, 576 (10th Cir.1980). In determining whether a defendant acted with deliberate indifference, the "essential test is one of medical necessity and not one simply of desirability." *Woodall v. Foti,* 648 F.2d 268, 272 (5th Cir. Unit A June 1981).

In this case, Stewart alleges that the lack of treatment for his gum disease and cavities has led to abscesses in his teeth. In spite of the worsening of his condition, Dr. Leftwich refused to treat the cavities or the abscesses. Accepting these facts as true, Stewart has at least stated an indifference to his condition and not just a disagreement with a treatment plan. He instead has alleged a lack of treatment, which was no plan at all. The level of indifference alleged would not entitled Dr. Leftwich to qualified immunity. The motion to dismiss the claims against Dr. Leftwich should be denied.

## I.    **More Definite Statement/*Schultea* Reply**

Finally, the defendants request that the plaintiff be required to submit a more definite statement of his claims in response to the qualified immunity defense.

In response to a qualified immunity defense, "plaintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to the constitutional violation." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir.1999); *see also* Fed. R. Civ. P. 7(a). The heightened pleading standard applicable in cases defended on qualified immunity grounds requires a plaintiff to plead "with factual detail and particularity, not mere conclusory allegations." *Id.*; *see also Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir.1995). In the § 1983 context, this standard translates in part into the requirement that the plaintiff "identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Anderson*, 184 F.3d at 443.

In the instant case, the Court, however, is of the opinion that such a reply is not necessary in light of the details outlined in Stewart's complaint and the testimony taken at the *Spears* Hearing, which is the equivalent of an amended pleading. Furthermore, as determined above, the allegations

24

presented were sufficient to rebut the application of the qualified immunity doctrine. Therefore, the request for a *Schultea* reply should be denied.

## VI.    Recommendation

It is therefore **RECOMMENDED** that the plaintiff's § 1983 claims against the defendants, J. Simmons, Bessie Carter, Dr. Thomas, B. Cooper, Warden James Miller, Dr. A. Leftwich, Officer Touchstone and EMT Stewart, in their official capacities, be **DISMISSED WITH PREJUDICE** as frivolous and/or for failure to state a claim for which relief can be granted and/or for seeking monetary damages from an immune defendant pursuant to Title 28 U.S.C. § 1915(e) and § 1915A and Title 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that the plaintiff's § 1983 claims against the defendants, Bessie Carter, B. Cooper, and Warden Miller, in their individual capacities, be **DISMISSED WITH PREJUDICE** as frivolous and/or for failure to state a claim for which relief can be granted pursuant to Title 28 U.S.C. § 1915(e) and § 1915A and Title 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that the defendants' **Motion to Dismiss Complaint (1) For Failure to Serve; and (2) as Frivolous, For Failure to State a Claim on Which Relief May Be Granted, and/or Because the Plaintiff Seeks Monetary Relief Against Defendants Who Are Immune From Such Relief Pursuant to 28 U.S.C. §1915(e)(2)(B)(i), (ii), and (iii) and Fed. R. Civ. P. 12(b)(1) and (6) and Motion For a More Definite Statement/Request for *Schultea* Reply (Rec. Doc. No. 20)** be:

   (1)    **DISMISSED in part as moot**, in light of the Court's statutory review, on the issue of lack of subject matter jurisdiction over the official capacity claims pursuant to Fed. R. Civ. P. 12(b)(1) , on the request that the Court conduct its statutory review under Title 28 U.S.C. § 1915, and on the request for dismissal under Fed. R. Civ. P.

12(b)(6) of the plaintiff's claims against Carter, Cooper and Miller, in their individual capacities;

(2) **GRANTED in part** under Fed. R. Civ. P. 12(b)(6) as to the plaintiff's claims against Officer Touchstone and the claims arising out of dental and eye care only against Nurse Simmons and those claims therefore should be **DISMISSED WITH PREJUDICE** for failure to state a claim for which relief can be granted.

(3) **DENIED in part** as to the request for dismissal for lack of service of EMT Stewart and Officer Touchstone under Fed. R. Civ. P. 4(m). The plaintiff should be ordered to provide the Court with a more complete name for EMT Stewart to affect re-issuance of summons, if this Report and Recommendation is adopted;

(4) **DENIED in part** as to the request for more definite statement/*Schultea* reply; and

(5) **DENIED in part** under Fed. R. Civ. P. 12(b)(6) as to the plaintiff's medical indifference claims against Nurse Simmons arising out of the duty status issue, Dr. Thomas, Dr. Leftwich and EMT Stewart. These claims should remain referred to the Magistrate Judge for further proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ___25th___ day of ___August___, 2005.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE